ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| TERRANCE B. SMITH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CV 307-024 ) |
| JIMMY SMITH, Officer, | ) ) |
| Defendant. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Georgia Diagnostic and Classification State Prison, in Jackson, Georgia, commenced the above-styled case pursuant to 42 U.S.C. § 1983. The matter is now before the Court on Defendant's motion for summary judgment. (Doc. no. 19). In response, Plaintiff filed his "Motion to Deny Summary Judgment."[1] (Doc.

---

[1] The Clerk provided Plaintiff with notice of Defendant's motion for summary judgment, apprised him of his right to file affidavits or other materials in opposition, and informed him of the consequences of default. (Doc. no. 20). Plaintiff responded, by filing a motion to deny summary judgment wherein he "denies all claims alleged in Respondent's answer . . . [and] ask[s] the Court to allow Petitioner to reserve the right to amend this traverse upon examination of Respondent's response." (Doc. no. 24, p. 1). Thereafter, the Court entered an Order warning Plaintiff of the consequences of his failure to respond and giving him additional time to file a supplemental response. (Doc. no. 25). Despite these warnings, Plaintiff has not submitted a supplemental response. Accordingly, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), have been satisfied. That having been established, the complaint is sworn and describes facts based upon personal knowledge. As the verified complaint meets the requirements of 28 U.S.C. § 1746 and Fed. R. Civ. P. 56(e), it is sufficient to create an issue of material fact in response to Defendant's motion. See United States. v. Four Parcels of Real Prop., 941 F.2d 1428, 1444 (11th Cir. 1991). Thus, the Court's Statement of Facts is taken from the verified complaint and the documents supporting Defendant's motion.

no. 24). For the following reasons, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**, that Plaintiff's motion to deny summary judgment be **DENIED**, and that an appropriate final judgment be **ENTERED** in favor of Defendant.

I.     **STATEMENT OF FACTS**

On July 3, 2005, Defendant, a sergeant with the City of Dublin Police Department, was contacted by Plaintiff's mother-in-law and father-in-law (hereinafter "in-laws"), and was asked to help locate one of the in-laws' vehicles that Plaintiff was driving without a license. (Doc. no. 19, Smith Aff. ¶¶ 2, 3). During this conversation, Plaintiff's in-laws also told Defendant that they had not seen their daughter, Plaintiff's wife, in several days.[2] (Id. ¶ 5). Plaintiff's in-laws provided Defendant with a description of their missing car, and after looking at several motels, Defendant located the vehicle at a trailer park. (Id. ¶ 8). Defendant then called 9-1-1 and had Plaintiff's in-laws notified of the location of the vehicle. (Id. ¶ 9).

Next, Defendant states that he approached Plaintiff, identified himself as a police officer, told Plaintiff he was looking for the vehicle, and also told Plaintiff that he (Defendant) knew that Plaintiff was driving without a license. (Id. ¶ 10). Defendant then asked Plaintiff where is wife was. (Id. ¶ 11). According to Defendant, Plaintiff responded that he did not know where his wife was, but he apparently suggested that she may be with a boyfriend. (Id.).

---

[2]Defendant also states that he knew Plaintiff and his wife had previously had domestic problems, but he did not know anything specific about Plaintiff and had never arrested Plaintiff. (Smith Aff. ¶¶ 6, 7).

2

Plaintiff's in-laws arrived at the trailer park, with a four-year-old grandchild, not Plaintiff's child, in the back seat of their car. (Id. ¶ 12). Plaintiff's mother-in-law confronted Plaintiff about her daughter's whereabouts, but Plaintiff would not answer her. (Id. ¶ 13). Plaintiff's mother-in-law then asked Defendant to look in the trunk of the vehicle that Plaintiff had been driving (the missing vehicle). (Id.). Defendant asked Plaintiff for the keys, and he gave them to Defendant. (Id. ¶ 14). As Defendant opened the trunk, Plaintiff ran to the car in which his in-laws had arrived (in which the four-year-old child remained) and "cranked the engine." (Id. ¶ 15). In the trunk, Defendant discovered a dead body covered by a blanket. (Id. ¶ 16). As such, according to Defendant, he ran to the driver's side of the car that Plaintiff was occupying (along with the four-year-old child), and told Plaintiff to exit the vehicle because he was under arrest. (Id. ¶ 17).

Plaintiff refused to exit form the vehicle, so, Defendant tried to break the window. (Id. ¶ 18). However, Plaintiff started to drive away, and in the process hit Defendant's arm with the side mirror of the vehicle. (Id.). Defendant next states, "Everything was happening fast, and I was afraid Plaintiff would harm the child, my fellow officers, or anyone else who got in the way of his escape, so I drew my weapon and fired at him once." (Id. ¶ 19). The bullet passed through Plaintiff's left upper arm and into the upper part of his leg. (Id. ¶ 20). Plaintiff drove the vehicle for a short distance and then collided with a pine tree. (Id. ¶ 21). Plaintiff was arrested and transported to the hospital for medical treatment. (Id. ¶ 22).

The dead body found in the trunk of the vehicle Plaintiff had been driving was that of his wife. (Id. ¶ 23). Plaintiff's wife had been choked and killed with blunt force trauma the night before Plaintiff's arrest. (Id. ¶ 24). Plaintiff pleaded guilty to murder, aggravated

assault on a police officer, kidnaping, and theft by taking. (Id. ¶ 25). Neither Plaintiff's conviction, nor his sentence, have been overturned, vacated, expunged, reversed, or called into question, and he is currently serving his sentence. (Id. ¶ 27).

Plaintiff's version of facts does not contradict those of Defendant's; however, Plaintiff's version is not quite as detailed. Plaintiff's facts consist of the following:

> On July 3rd 2005[,] I Terrance B. Smith was approached by Officer Smith while standing on the passenger side of my vehicle at which time Officer Smith advised me that the vehicle had been reported missing. Officer Smith requested the keys to that vehicle and I told him that my Aunt had the keys.
>
> Shortly thereafter[,] my in-laws arrived on the scene and the keys [were] retrieved. I the Plaintiff got into my in-laws car attempting to leave and Officer Smith stated halt, while struggling to get the car in gear[,] Officer Smith fired a shot into the driver['s] side striking me in the left biceps [sic] area passing through to enter my right thigh.

(Doc. no. 1, p. 5).

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials

---

[3]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue

of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Individual Capacity Claims Against Defendant

#### 1. Excessive Force

Liberally construing Plaintiff's complaint, the Court found that Plaintiff had stated an arguably viable Fourth Amendment claim against Defendant for use of excessive force during Plaintiff's arrest. (Doc. no. 7, p. 2). There is no dispute that Defendant, in attempting to arrest Plaintiff, discharged his weapon once, resulting in the bullet passing through Plaintiff's upper left arm and upper part of his leg. Defendant, however, contends that only reasonable and necessary force was used to effectuate the arrest.

"In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing Brosseau v. Haugen, 543 U.S. 194, 197 (2004)). "A genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest." Id. (citing Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1332 (11th Cir.2006). "The Fourth Amendment provides the right to be 'free from the use of excessive force in the course of an investigatory stop or other 'seizure' of the person.'" Beshers v. Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (citation omitted). Although the right to make an arrest or investigatory stop carries with it the right to use some degree of force, "all claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." Graham v. Connor, 490 U.S. 386, 395-

96 (1989). The analysis of an allegation of use of excessive force requires the Court to determine whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. The "reasonableness" of the force utilized "turns on the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006) (internal quotations and citations omitted).

Deadly force is "reasonable" for the purposes of the Fourth Amendment when an officer "(1) 'has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others' or 'that he has committed a crime involving the infliction or threatened infliction of serious physical harm;' (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible." Vaughan v. Cox, 343 F.3d 1323, 1329-30 (11th Cir. 2003) (quoting Tennessee v. Garner, 471 U.S. 1(1985); see also Crosby v. Monroe County, 394 F.3d 1328, 1333 (11th Cir. 2004) ("the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.")).

Here, there is no dispute that Defendant, in an attempt to effectuate Plaintiff's arrest, discharged his firearm once, resulting in Plaintiff being shot. Therefore, the Court must determine whether this use of force was objectively reasonable. In this regard, even

7

Plaintiff's account of the events that occurred during his arrest indicate that he was attempting to flee from Defendant, despite Defendant's warning to "halt." Plaintiff states, "I the Plaintiff got into my in-laws car attempting to leave and Officer Smith stated halt, while struggling to get the car in gear[,] Officer Smith fired a shot into the driver['s] side striking me in the left biceps [sic] area passing through to enter my right thigh." (Doc. no. 1, p. 5).

Additionally, the facts leading up to Plaintiff's arrest establish that Defendant was informed that Plaintiff's in-laws were searching for their daughter, whom they had not seen in several of days, as well as a their vehicle that Plaintiff was purportedly driving (without a license). Defendant located Plaintiff and the missing vehicle. Defendant identified himself, and questioned Plaintiff about the missing vehicle as well as the whereabouts of Plaintiff's wife. When Defendant opened the trunk of the missing vehicle that Plaintiff had been using, he discovered a dead body. While Defendant was opening the trunk, Plaintiff "ran" to the in-laws' other car, "jumped in and cranked the engine." Thereafter, once Defendant discovered the dead body, he attempted to place Plaintiff under arrest. However, Plaintiff attempted to flee from Defendant, in the process of fleeing Plaintiff struck Defendant's arm with the mirror of the vehicle, and there was a four-year-old child (not Plaintiff's) in the vehicle in which he was attempting to flee.

To sum up, Plaintiff was suspected of committing murder, he assaulted a police officer, and he was attempting to evade arrest by fleeing in a stolen vehicle with a young child in the back seat. Thus, it was reasonable, in light of the facts and circumstances confronting Defendant to use the force that he did to prevent Plaintiff's escape and effectuate

the arrest.[4]

Defendant, therefore, had probable cause to believe that Plaintiff earlier had committed a violent felony, could reasonably perceive that Plaintiff posed an imminent threat of violence to Defendant and other bystanders, and noted that Plaintiff ignored Defendant's command to halt. Defendant's decision to shoot Plaintiff under these circumstances was objectively reasonable. McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1246 (11th Cir. 2003) (citing Graham, 490 U.S. at 396 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.")). Therefore, Plaintiff's Fourth Amendment claim based on the alleged use of excessive force for his arrest is without merit, and Defendant is entitled to summary judgement.

## 2. Qualified Immunity

Defendant also argues that he is entitled to qualified immunity. Qualified immunity protects government officials from liability in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the

---

[4] Furthermore, under Georgia law, a law enforcement officer is justified in using deadly force to prevent death or great injury to himself or to third parties. See O.C.G.A. §17-4-20.

plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

The Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). If Plaintiff's constitutional rights would have been violated under his version of the facts, "the next, sequential step is to ask whether the right was clearly established." Saucier, 533 U.S. at 201. Finally, "[q]ualified immunity is not available to municipal governments. [Their] liability is judged under the standards set forth in Monell v. Dept. of Soc. Servs. of New York, 436 U.S. 658 (1978)." Harrill v. Blount County, 55 F.3d 1123, 1126 (6th Cir. 1995).

Here Defendant argues that he is entitled to qualified immunity. (Doc. no. 19, pp. 15-21). As noted *supra*, the Court concludes that Defendant did not violate Plaintiff's Fourth Amendment right because it is constitutionally reasonable for an officer to use deadly force when a suspect is threatening escape and possible harm to others. Robinson v. Arrugueta, 415 F.3d 1252, 1256 (11th Cir. 2005). As the Court concludes that there was no constitutional violation, it need not proceed to the second step of the analysis. Therefore, Defendant is entitled to qualified immunity under the first step of the analysis.

C.   **Official Capacity Claims Against Defendant**

The Court turns next to Plaintiff's official capacity claims against Defendant. (See generally doc. no. 1). Defendant argues that, as a municipal police officer, he acted on behalf of the municipality during the course of the events in question, and thus is entitled to

immunity from suit in his official capacity. (Doc. no. 19, pp. 14-15). Where a § 1983 Plaintiff sues a government employee (such as a police officer) in his official capacity, the suit is in actuality against the governmental entity that the individuals represent. Farred v. Hicks, 915 F.2d 1530, 1532 (11th Cir. 1990). Accordingly, Defendant, in his official capacity, represents the City of Dublin ("the City").

It is axiomatic that in order to be held liable for a § 1983 violation, a municipality must be found to have *itself* caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory. Skope v. City of Atlanta, Georgia, 485 F.3d 1130, 1145 (11th Cir. 2007) (citing Monell v. Dep't of Soc. Servs. 436 U.S. 658, 694-95, (1978); see also City of Canton v. Harris, 489 U.S. 378, 385 (1989). "Governmental entities may be held liable under section 1983 when a governmental 'policy or custom' is the 'moving force' behind the constitutional deprivation." Farred, 915 F.2d at 1532-33. Thus, Plaintiff can only succeed on his § 1983 claim against the City by showing that his injury was the result of the city's unlawful "policy or custom." Monell, 436 U.S. at 694.

However, an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred. Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) (citing Vineyard v. County of Murray, Ga., 990 F.2d 1207, 1211 (11th Cir.), *cert. denied,* 510 U.S. 1024 (1993)). Here, as noted by Defendant, Plaintiff has not identified, or even alleged, a City policy or custom that caused the alleged use of excessive force. Moreover, as the Court concludes that Defendant's conduct did not cause Plaintiff to suffer a constitutional deprivation, it need not inquire into the City's policy and custom relating to the use of excessive force in effectuating an arrest. Id. (citing Los Angeles v.

Heller, 475 U.S. 796, 799 (1986) (finding that a departmental policy or regulation authorizing the use of constitutionally excessive force is not relevant when a person has not been deprived of a constitutional right as a result of actions taken by an individual police officer)); Roach v. City of Fredericktown, Mo., 882 F.2d 294, 297-98 (8th Cir. 1989) (finding that a municipality may be held liable under section 1983 for inadequate training only after determining that the plaintiff has suffered a constitutional deprivation as a result of the municipal employee's conduct). Therefore, the Court's finding that Plaintiff did not suffer any constitutional deprivation makes it unnecessary to consider the City's policy or custom. Thus, Defendant is entitled to summary judgment on the official capacity claims.

## III. CONCLUSION

For the foregoing reasons, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**, that Plaintiff's motion to deny summary judgment be **DENIED**, and that an appropriate final judgment be **ENTERED** in favor of Defendant.

SO REPORTED and RECOMMENDED this ___ day of January, 2009, at Augusta Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE